(Reap. Dec. 10091)

A. J. VAN DUGTEREN & SONS, INC., ET AL. *v.* UNITED STATES

Entry No. 832644, etc.

(Decided October 31, 1961)

*John D. Rode* for the plaintiffs.

*William H. Orrick, Jr.*, Assistant Attorney General (*Morris Braverman*, trial attorney), for the defendant.

LAWRENCE, Judge: Importations of certain flatware, consisting of spoons, forks, knives, coffee spoons, salad forks, and butter spreaders, all bearing the item number 2050, known as the "Vienna" pattern, were appraised on the basis of their foreign value in Austria in accordance with a home market pricelist.

The merchandise on the invoices dated prior to June 1, 1955, were appraised on the basis of that pricelist, less 25 per centum, less 2 per centum, plus packing. On the invoices subsequent to June 1, 1955, the articles were appraised in accordance with the pricelist, plus 10 per centum, less 25 per centum, less 2 per centum, plus packing.

Plaintiff contends that there is neither foreign nor export, nor United States value, for the subject merchandise or for similar merchandise and that the appraisement should be made on the basis of cost of production.

The pertinent statutory provisions of the Tariff Act of 1930 (19 U.S.C. § 1402(c) (d) (e) (f) ), as amended by the Customs Administrative Act of 1938, read as follows:

(c) The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(d) The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(e) The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of

the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

(f) For the purpose of this subtitle the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

At the trial, five reappraisement appeals, enumerated in schedule "A," attached hereto, were consolidated for trial. The evidence produced at the trial on behalf of plaintiff consisted of the testimony of one witness and two affidavits, which were marked exhibits 1 and 2, respectively. The Government introduced a report of the Treasury representative in Frankfort, Germany, which was marked in evidence as collective exhibit A.

It is provided by statute (19 U.S.C. § 1402(a)) that the value of imported merchandise shall be the foreign value or the export value, whichever is higher, and where such value cannot satisfactorily be ascertained, resort may be had to the United States value or the cost of production, respectively.

Accordingly, consideration will be given first to the presence or absence of a foreign or export value for the stainless steel flatware in issue.

Plaintiff's exhibit 1 consists of an affidavit of Dr. Friedrich Flach, managing director of the seller, duly sworn to before the American consul, October 17, 1960, wherein it is stated as follows:

Dr. Friedrich FLACH, being first duly sworn deposes and says that he is a citizen and resident of Austria; that he is the managing director of

Neuzeughammer Ambosswerk, Neuzeug bei Steyr, Austria; that he has been with said company for more than 10 years; that said company is engaged in the manufacture and sale of cutlery and flatware since 1769; that as managing director he is familiar with the items manufactured and sold by said company to A. J. Van Dugteren & Sons, Inc., New York, U.S.A. during the period from January 1955 to-date; that said items consisted of certain flatware of Vienna modern pattern item number 2050; that said items were designed and created in 1954 specially and solely for the United States market; that as managing director he is familiar with market conditions in Austria relating to the offer and sale of flatware such as or similar to the item sold and exported by his firm to the United States; that at no time during the above mentioned period of January 1955 to date did his firm freely offer or sell such or similar flatware to all purchasers for home consumption in Austria but limited and restricted offers and sales as follows:

(1) offers and sales were made to only two types of purchasers, namely retailers and wholesalers (2) offers and sales to retailers were further limited and restricted to retailers having special shops for householdwares (3) offers and sales to wholesalers were limited and restricted to those wholesalers who handled only cutlery and household wares (4) the price at which offers and sales were made to retailers depended upon the annual turnover of the particular shop, its location (whether in a city, town or village) and character, there being no single price at which such cutlery was offered or sold to all retailers; (5) the price at which offers and sales were made to the above indicated wholesalers was limited to such wholesalers, and no sales or offers for sale were made at such price to any retailers or any other class of purchaser (6) the prices at which such or similar merchandise was offered or sold to retailers as noted above, were prices which were never offered to wholesalers or any other class of purchasers; (7) there was at no time during the period mentioned any one price at which such or similar merchandise was freely offered or sold to all purchasers for home consumption; (8) aside from the specified wholesalers and retailers mentioned above, said firm did not offer or sell such or similar merchandise to any other class of buyers such as chain stores, department stores, mail order houses, cooperatives, manufacturers, private individuals or shops that do not deal in cutlery and householdwares; (9) in all cases sales and offers for sale were limited to those purchasers who agreed to maintain the resale or retail price fixed by his firm; that based upon his many years experience in dealing in flatware in Austria, his contacts with customers, prospective buyers, manufacturers, dealers, trade associations, market reports, advertisements, trade papers and magazines, he knows that no flatware such as or similar to the Vienna modern pattern item number 2050 flatware sold by his firm to A. J. Van Dugteren & Sons, Inc. was during the period stated above freely offered for sale to all purchasers by any other manufacturer, firm, dealer or person in Austria either for home consumption in Austria or for exportation to the United States; that at all times during said period his firm limited and restricted its sales of item 2050 for exportation to the United States to A. J. Van Dugteren & Sons, Inc. as its sole representative for this model; that under his position he is also thoroughly familiar with the cost of production of the flatware produced by said firm, being in charge of the accounting records relating thereto; that he knows them to be accurate and correct in every respect; * * *.

Plaintiff's exhibit 2, an affidavit of Dr. Fritz Mayer, duly sworn to before the American consul, October 17, 1960, is here set forth as follows:

Dr. Fritz Mayer being first duly sworn deposes and says that he is associated with the Bundeshandelskammer, Vienna, Austria, a semi-official organization dealing with trade and commerce in Austria; that in his official capacity he is familiar with the flatware industry in Austria; that he is well acquainted with the firm of Neuzeughammer Ambosswerk, Neuzeug bei Steyr, Austria; that he is also familiar with the flatware manufactured by said firm and sold for export to the United States, designated Vienna Modern Pattern Item Number 2050; that to the best of his knowledge and belief he knows of no other manufacturer of flatware in Austria making any flatware either the same as said item number or similar thereto in design, weight, finish, alloy, or that is substantially equivalent thereto in price or value.

Further, on the subject of foreign or export value, the court refers to defendant's collective exhibit A, which is a report of Treasury Representative Arno Hellthaler of an interview had on July 30, 1956, with Dr. Rudolf Margerl, sales manager of the manufacturer and seller of the instant merchandise. Under the caption "FOREIGN VALUE," the following information appears:

Such or Similar Merchandise: The merchandise sold to importer van Dugteren is of the regular line of the manufacturer's products and is sold for home consumption. It is illustrated in Exhibit A. The merchandise sold to importer Salm was especially manufactured for the importer and is not offered for sale or sold to anyone else.

Restrictions: There are no restrictions of any kind imposed by the manufacturer on the buyers of the merchandise sold for home consumption.

Prices, Terms: Attached to this report as Exhibits B and C are the price lists covering the regular items sold by the firm. Exhibit B was effective in October 1953 and the prices therein were increased by 10% on June 1, 1955. It was replaced by the price list effective February 1, 1956 attached to this report as Exhibit C.

The prices of the price lists represent the manufacturer's gross selling prices (termed "Brutto Preise" in the German language) which are also the proposed retail selling prices for home consumption. The manufacturer grants merchandise discounts from these prices in all cases. The discounts granted are

to retailers from 25% to 37½%
to wholesalers 50%.

Mr. Margerl stated that 90% of all sales for home consumption were made with a discount of 33⅓%. I was given an opportunity to check sufficient copies of the invoice file to ascertain this statement to be correct and its applicability to the merchandise in question.

The price list prices are ex-factory and include the packing and the turnover tax of 5.25%.

\* \* \* \* \* \* \*

Principal Market: The merchandise is manufactured, and bought and sold at the factory.

Usual Wholesale Quantity: An examination of copies of sales invoices revealed that most sales were made at a discount of 33⅓% regardless of quantity.

On the subject of "EXPORT VALUE," Treasury Representative Arno Hellthaler's interview with Margerl developed the following information:

Relationship: The relationship existing between the manufacturer and the importers involved is that of seller and buyers, respectively. The merchandise was sold outright and the manufacturer has no further interest in the merchandise after the sale. Mr. Margerl informed me that a contract dated September 21, 1954, as amended, exists, giving the importer A. J. van Dugteren & Sons, Inc., New York, N.Y., hereinafter referred to as van Dugteren, exclusive rights to import the manufacturer's regular line of merchandise into the United States. The merchandise shipped to importer Arthur Salm, Inc., Chicago, Ill., hereinafter referred to as Salm, consists of articles which were made especially for this importer and in accordance with his suggestions. The manufacturer and the importers have no financial interest in each other.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

Merchandise: The merchandise which is produced in Neuzeug bei Steyr, Austria, and sold to importer van Dugteren consists of stainless steel knives, forks, spoons and cutlery sets of the manufacturer's regular line of products which are also sold in the home market. These items are identified by the same numbers in both markets and are illustrated in the attached brochures marked *Exhibit A*.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

Prices and Terms: The prices charged to van Dugteren were said to represent approximately 50% of the suggested retail selling prices listed in the price lists attached to this report as *Exhibits B and C*. \* \* \*

The above-quoted matter has been set forth in detail to point up the contradictory and confused state of the record here presented.

On the one hand, there are the unequivocal statements, *inter alia*, of Dr. Flach that flatware of the "Vienna modern" pattern, number 2050, was "designed and created in 1954 specially and solely for the United States market" and "that at no time during the above mentioned period of January 1955 to date did his firm freely offer or sell such or similar flatware to all purchasers for home consumption in Austria."

On the other hand, it was stated by Dr. Margerl with equal clarity that "The merchandise sold to importer van Dugteren is of the regular line of the manufacturer's products and is sold for home consumption"; also, that "There are no restrictions of any kind imposed by the manufacturer on the buyers of the merchandise sold for home consumption" and that the merchandise was sold according to published pricelists.

The report of Treasury Representative Arno Hellthaler was based upon an interview had with the sales manager of the manufacturer of the involved merchandise who produced books and records of accounts from which the Treasury representative could carry on his investigation. The affidavits of Dr. Friedrich Flach and of Dr. Fritz Mayer are not supported by reference to any books or records of accounts.

Moreover, the investigation by Treasury Representative Hellthaler was made shortly after importation of the controverted merchandise, when there was no suggestion of litigation, whereas the affidavit of

Dr. Flach was prepared more than 4 years later and in anticipation of its use in reappraisement proceedings.

On the instant record, the court is of the opinion that the finding by the appraiser of a foreign value for such or similar merchandise to that imported has not been overcome by the evidence here presented. Accordingly, the court finds as facts:

1. The flatware in issue consists of certain spoons, forks, knives, coffee spoons, salad forks, and butter knives, all bearing the item number 2050, known as the "Vienna" pattern, exported from Austria.

2. That such or similar merchandise, on or about the date of exportation, was freely offered for sale for home consumption to all purchasers in the principal markets of Austria, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

3. That, on or about the date of exportation of the merchandise involved herein, such or similar merchandise was not freely offered for sale to all purchasers in the principal markets of Austria for exportation to the United States, in the usual wholesale quantities and in the ordinary course of trade.

The court concludes as a matter of law that:

1. The proper basis of value for the merchandise herein involved was foreign value, as that value is defined in section 402(c) of the Tariff Act of 1930, as amended, *supra* (19 U.S.C. § 1402(c)), and that there was no export value for such or similar merchandise.

2. Said foreign value is the value found by the appraiser.

Judgment will issue accordingly.