(A.R.D. 154)

A. J. Van Dugteren & Sons, Inc. *v.* United States

Entry Nos. 832644; 823536; 795821; 880324.

Third Division, Appellate Term

(Decided April 24, 1963)

*John D. Rode* for the appellant.

*John W. Douglas*, Assistant Attorney General (*Morris Braverman*, trial attorney), for the appellee.

Donlon, Judge: There is before us an application for review of the decision and judgment below sustaining the appraised values in five cases which were consolidated for trial, all appealing from the appraiser's valuation of certain flatware, exported from Austria in 1955. *A. J. Van Dugteren & Sons, Inc., et al.* v. *United States*, 47 Cust. Ct. 494, Reap. Dec. 10091. Subsequent to argument of the appeal, plaintiff-appellant has abandoned, in writing, its appeal R58/27595. That appeal has been severed from the consolidated cases and judgment entered dismissing it. We, therefore, proceed to review the decision below, which is now limited to the remaining four consolidated cases.

The issue which was tried below was, briefly, whether flatware of Austrian manufacture, described as manufacturer's item number 2050, was properly appraised on the basis of foreign value. Appellant (plaintiff below) claims that there is no foreign, export, or United States value for the merchandise, and that it should, therefore, be appraised on the basis of the cost of production of the merchandise.

The flatware of these appeals to reappraisement consists of spoons, forks, knives, coffee spoons, salad forks, and butter spreaders. The trial judge found that the flatware, all identified as item 2050, was not freely offered in Austria in 1955 for export to the United States, thus eliminating export value as the basis of appraisement, and that the evidence adduced on trial was insufficient to overcome the presumption that appraisement on the basis of foreign value was correct.

Appellant's application alleges several errors of the trial judge. All such errors appear to be related to a charge that the trial judge did not give due weight to appellant's evidence and that he gave undue weight to defendant's proofs. That is to say, appellant argues that its proofs make at least a *prima facie* case that such or similar flatware was not freely offered in Austria in 1955 to domestic buyers, that such or similar flatware was not freely offered in Austria in that year for sale for export to the United States, that such or similar flatware was not freely offered in 1955 in the United States, and that the cost of production value components have been shown by its proofs on trial.

If plaintiff's proofs have established these facts, then the burden of proof shifted to defendant, and it becomes necessary to weigh also defendant's evidence.

Appellant (plaintiff below) introduced in evidence two affidavits and relies on those to negative both foreign and export values as the basis of appraisement, as well as for the other facts appellant claims to have proved. Since appellee (defendant below) concedes that the facts do not support export value as the appraisement basis, and

since the trial judge found that the proofs did not overcome the presumption that foreign value, as found by the appraiser, is correct, we need now consider these affidavits only as to their probative value on the issue of foreign value. What are the proofs relevant to that issue?

Dr. Friedrich Flach swore by affidavit before the American consul in Vienna, on October 17, 1960 (exhibit 1), that he is managing-director of Neuzeughammer Ambosswerk of Neuzeug bei Steyr, in Austria, and had been "with said company" for more than 10 years at the date of his affidavit; that, as managing director, he is familiar with items manufactured and sold by his company to A. J. Van Dugteren & Sons, Inc., plaintiff below, from January 1955 to date; that such items consisted of the flatware, identified as number 2050, a line that was designed and created in 1954 specially and solely for the United States market; that at no time between January 1955 and date (October 17, 1960) did his company "freely offer or sell such or similar flatware to all purchasers for home consumption in Austria but limited and restricted offers and sales" as particularly recited in the affidavit, which the trial judge included *verbatim* in his opinion. Dr. Flach made statements also that bear on the issue of United States value as the basis of appraisement and as to the amount of value computed on the basis of cost of production. We shall first weigh Dr. Flach's affidavit, and the other affidavit introduced into evidence by plaintiff, on the issue as to whether or not the trial judge properly held that the presumption as to foreign value had not been overcome.

The affidavit of Dr. Fritz Mayer (exhibit 2) also was sworn to before the American consul in Vienna on October 17, 1960. Dr. Mayer states that he is associated with the Bundeshandelskammer of Vienna, "a semi-official organization dealing with trade and commerce in Austria." His affidavit is, at most, only proof that flatware the same as or similar to number 2050, of these appeals, was not "to the best of his knowledge" made at an undisclosed time by any other manufacturer of flatware in Austria. The points of similarity negated by Dr. Mayer include design, weight, finish alloy, price, and value. This affidavit may be disregarded because there is nothing in it that relates the sworn statements, made in 1960, to the involved year, 1955. To ascribe the stated facts to another time would be to distort the present tense of the affidavit into an uncertain past time. We may not by inference extend the proofs beyond their clear purport.

While the trial judge did not say so in his opinion below, it must be that he thought Dr. Flach's statements had made a *prima facie* case, for he proceeded to weigh defendant's proofs and found that, considering both, the proofs adduced by defendant overcame any probative value that might be ascribed to Dr. Flach's affidavit on the issue of foreign value.

We agree that, if unrebutted, Dr. Flach's statements make out a *prima facie* case negativing foreign value as the basis of appraisement. What, then, is the rebuttal evidence?

Defendant introduced the report of Treasury Representative Arno Hellthaler, on an interview July 30, 1956, with Dr. Rudolf Margerl, sales manager of Neuzeughammer Ambosswerk, the manufacturer and seller of this flatware. (Collective exhibit A.) Attached to exhibit A are two pricelists, designated in the court record as, respectively, exhibits B and C.

Exhibit B is a manufacturer's pricelist, dated October 1953. It shows no item that is numbered 2050, the item number of this flatware. It is, of course, understandable that a pricelist dated in 1953 would not include an item that was not designed or made prior to 1954, a fact which is stated by Dr. Flach.

Exhibit C is a manufacturer's pricelist, dated February 1, 1956. It does list item 2050; but the relevance of a 1956 offering to the year we are considering, 1955, has not been shown.

We find that the pricelists, exhibits B and C, are without probative value as to 1955 offerings of item 2050.

The text of Mr. Hellthaler's report has to do with sales to Arthur Salm, Inc., of Chicago, as well as sales to plaintiff. It appears that, in each case, the merchandise was a special line. Hence, so much of the report as relates to the Salm merchandise should be disregarded, for it lacks probative value as to the Van Dugteren merchandise. However, the two lines are so intermingled and confused in the agent's report, that it is not easy to isolate the relevant facts.

Mr. Hellthaler reports, as to the foreign value of flatware sold to Van Dugteren, that the "merchandise sold to importer van Dugteren is of the regular line of the manufacturer's products and is sold for home consumption. It is illustrated by Exhibit A." There appears to be no disagreement as to the relevance of the illustrations. However, they are not dated and, hence, do not assist us in determining whether they were freely offered to purchasers in Vienna in 1955.

Dr. Margerl, the sales manager of Neuzeughammer Ambosswerk on July 30, 1956, is not shown in the report to have been in that office for any period of time. However, he did say to Mr. Hellthaler that "a contract dated September 21, 1954, as amended, exists, giving the importer A. J. van Dugteren & Sons, Inc., New York, N.Y., * * * exclusive rights to import the manufacturer's regular line of merchandise into the United States." There is nothing to indicate the date or scope of the amendment. The contract is not shown. What the contract was in 1955, at the time of these importations, does not appear.

From the 1953 pricelist (exhibit B), it appears that item 2050 was not a part of the regular line in 1955. Mr. Hellthaler clearly states, in his report, that the 1953 pricelist covers "the regular items sold by"

Neuzeughammer Ambosswerk, that the exhibit B pricelist was effective from October 1953 until it was replaced by exhibit C, dated February 1, 1956, except that the 1953 prices were increased 10 per centum in 1955. There is nothing to show that any new regular lines, other than those shown on exhibit B, were offered prior to February 1, 1956, the date when for the first time item 2050 does appear (exhibit C) as a part of the regular line offerings.

The issue here is not whether item 2050 was regularly offered to Austrian customers in 1956. Certainly, there is evidence in exhibit C to weigh against the evidence adduced by Dr. Flach's affidavit *as to that year*. The issue here is whether item 2050 was regularly offered to Austrian customers in 1955, and neither exhibit B nor exhibit C shows such offering. Nor does any statement by Dr. Margerl, as reported by Mr. Hellthaler, throw light on that issue.

We do not ascribe as much relative weight as did the trial judge to the respective dates of the exhibits. When litigation starts, evidence is customarily prepared for the purpose of adducing it on trial. If the facts stated were within the knowledge of the witness at the relevant time, the fact that testimony comes later is not prejudicial.

Because the trial judge found that the evidence, weighed as a whole, did not overcome the presumptively correct foreign value appraisement, he found it unnecessary to make findings as to United States value or cost of production. In view of our decision that the evidence, weighed as a whole, does overcome that presumption and shows, to the contrary, that there were no such free offerings of item 2050 *in 1955* as to support a finding of foreign value, the trial judge should have opportunity to make such findings, and the case is remanded for that purpose.

On the record before us, we find as facts:

1. The flatware in issue consists of certain spoons, forks, knives, coffee spoons, salad forks, and butter knives, all bearing the item number 2050, known as the "Vienna" pattern, exported from Austria in 1955.

2. That such or similar merchandise, on or about the date of exportation, was not freely offered for sale for home consumption to all purchasers in the principal markets of Austria, in the usual wholesale quantities and in the ordinary course of trade.

3. That, on or about the date of exportation of the merchandise involved herein, such or similar merchandise was not freely offered for sale to all purchasers in the principal markets of Austria for exportation to the United States, in the usual wholesale quantities and in the ordinary course of trade.

We conclude as a matter of law that:

1. The proper basis of value for the merchandise herein involved is not either foreign or export value, as such values are defined in section 402 (c) and (d) of the Tariff Act of 1930, as amended.

In order to permit the trial judge to make findings of fact and conclusions of law as to United States value and cost of production value, the judgment below is reversed, and the four remaining consolidated cases are remanded for further proceedings in accordance with the decision herein.

Judgment will enter accordingly.